1
2
3
4
5          UNITED STATES DISTRICT COURT
6          EASTERN DISTRICT OF WASHINGTON

7   LESLIE S.,

8                          Plaintiff,          NO. 1:19-CV-3283-TOR

9          v.                                  ORDER GRANTING DEFENDANT'S
                                               MOTION FOR SUMMARY
10  ANDREW M. SAUL, Commissioner               JUDGMENT
    of Social Security,
11
                          Defendant.
12

13          BEFORE THE COURT are the parties' cross-motions for summary

14  judgment (ECF Nos. 15, 16).  Plaintiff is represented by D. James Tree.  Defendant

15  is represented by Ryan Lu.  This matter was submitted for consideration without

16  oral argument.  The Court has reviewed the administrative record and the parties'

17  completed briefing, and is fully informed.  For the reasons discussed below, the

18  Court **DENIES** Plaintiff's Motion and **GRANTS** Defendant's Motion.

19                          **JURISDICTION**

20          The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 1

1

**STANDARD OF REVIEW**

2    A district court's review of a final decision of the Commissioner of Social

3  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

4  limited: the Commissioner's decision will be disturbed "only if it is not supported

5  by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

6  1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means

7  relevant evidence that "a reasonable mind might accept as adequate to support a

8  conclusion." *Id.* at 1159 (quotation and citation omitted).  Stated differently,

9  substantial evidence equates to "more than a mere scintilla[,] but less than a

10  preponderance." *Id.* (quotation and citation omitted).  In determining whether this

11  standard has been satisfied, a reviewing court must consider the entire record as a

12  whole rather than searching for supporting evidence in isolation.  *Id.*

13    In reviewing a denial of benefits, a district court may not substitute its

14  judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

15  1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

16  rational interpretation, [the court] must uphold the ALJ's findings if they are

17  supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674

18  F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

19  ALJ's decision on account of an error that is harmless." *Id.*  An error is harmless

20  "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that [he or she] is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 § 404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

1      If the claimant is not engaged in substantial gainful activities, the analysis

2    proceeds to step two.  At this step, the Commissioner considers the severity of the

3    claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers

4    from "any impairment or combination of impairments which significantly limits

5    [his or her] physical or mental ability to do basic work activities," the analysis

6    proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment

7    does not satisfy this severity threshold, however, the Commissioner must find that

8    the claimant is not disabled.  *Id.*

9      At step three, the Commissioner compares the claimant's impairment to

10    several impairments recognized by the Commissioner to be so severe as to

11    preclude a person from engaging in substantial gainful activity.  20 C.F.R. §

12    404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the

13    enumerated impairments, the Commissioner must find the claimant disabled and

14    award benefits.  20 C.F.R. § 404.1520(d).

15      If the severity of the claimant's impairment does meet or exceed the severity

16    of the enumerated impairments, the Commissioner must pause to assess the

17    claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

18    defined generally as the claimant's ability to perform physical and mental work

19    activities on a sustained basis despite his or her limitations (20 C.F.R. §

20    404.1545(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 4

1    At step four, the Commissioner considers whether, in view of the claimant's

2    RFC, the claimant is capable of performing work that he or she has performed in

3    the past ("past relevant work").  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is

4    capable of performing past relevant work, the Commissioner must find that the

5    claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of

6    performing such work, the analysis proceeds to step five.

7    At step five, the Commissioner considers whether, in view of the claimant's

8    RFC, the claimant is capable of performing other work in the national economy.

9    20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner

10    must also consider vocational factors such as the claimant's age, education and

11    work experience.  *Id.*  If the claimant is capable of adjusting to other work, the

12    Commissioner must find that the claimant is not disabled.  20 C.F.R. §

13    404.1520(g)(1).  If the claimant is not capable of adjusting to other work, the

14    analysis concludes with a finding that the claimant is disabled and is therefore

15    entitled to benefits.  *Id.*

16    The claimant bears the burden of proof at steps one through four above.

17    *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

18    step five, the burden shifts to the Commissioner to establish that (1) the claimant is

19    capable of performing other work; and (2) such work "exists in significant

20

1    numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*,

2    700 F.3d 386, 389 (9th Cir. 2012).

3                                **ALJ'S FINDINGS**

4            On February 5, 2013, Plaintiff protectively filed an application for Title II

5    disability insurance benefits, alleging an amended onset date of February 1, 2012.

6    Tr. 44, 177-83.  The application was denied initially, Tr. 106-08, and on

7    reconsideration, Tr. 112-16.  Plaintiff appeared at a hearing before an

8    administrative law judge ("ALJ") on March 17, 2015.  Tr. 40-77.  On July 24,

9    2015, the ALJ denied Plaintiff's claim.  Tr. 16-39.  On January 27, 2017, the

10   Appeals Council denied review.  Tr. 1-7.

11           Plaintiff appealed the ALJ's decision to this Court.  Case No. 1:17-CV-

12   3055-MKD.  On October 23, 2017, pursuant to the parties' stipulation, the matter

13   was remanded to the Social Security Administration for further proceedings.  Tr.

14   545-47.  On June 18, 2019, Plaintiff appeared at a second hearing before the ALJ.

15   Tr. 467-513.  On September 6, 2019, the ALJ denied Plaintiff's claim.  Tr. 405-31.

16           As a threshold matter, the ALJ found Plaintiff met the insured status

17   requirements of the Social Security Act through December 31, 2015.  Tr. 411.  At

18   step one of the sequential evaluation analysis, the ALJ found Plaintiff had not

19   engaged in substantial gainful activity from February 1, 2012, the amended alleged

20   onset date, through December 31, 2015, the date last insured.  *Id.*  At step two, the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 6

ALJ found Plaintiff had the following severe impairments: spinal impairment(s), osteoarthritis and/or rheumatoid arthritis, affective disorder(s), anxiety disorder(s), and substance abuse disorder. *Id.* At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. *Id.* The ALJ then found Plaintiff had the RFC to perform light work with the following limitations:

> [S]he could lift and carry up to ten pounds occasionally and frequently. She could not climb ladders, rope, or scaffolding, or work at unprotected heights. She could occasionally stoop, kneel, crouch and crawl. She could occasionally reach overhead and could frequently handle and finger. She could understand, remember and carry out work that met the criteria for past relevant work (i.e., work performed long enough to learn it, within the last fifteen years, at substantial gainful activity levels) as well as unskilled routine and repetitive work. She could cope with occasional work setting change and occasional interaction with supervisors. [Plaintiff] could work in proximity to coworkers, but not in a team or cooperative effort. She could perform work that did not require interaction with the general public as an essential element of the job, but occasional incidental contact with the general public was not precluded. Within these parameters, she could meet ordinary and reasonable employer expectations regarding attendance, production, and workplace behavior.

Tr. 413-14.

At step four, the ALJ found Plaintiff was capable of performing past relevant work as an office manager and a bookkeeper. Tr. 422. Alternatively, at step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform through

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

the date last insured, such as document preparer, toy stuffer, and escort vehicle driver. Tr. 424. The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from February 1, 2012, the amended alleged onset date, through December 31, 2015, the date last insured. *Id.*

Defendant did not file exceptions to the ALJ's decision, and the Appeals Council did not assume jurisdiction of this case. Therefore, the ALJ's June 2019 decision became the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 404.984(d).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act. Plaintiff raises the following issues for the Court's review:

1.  Whether the ALJ properly considered the Listing of Impairments;

2.  Whether the ALJ properly weighed Plaintiff's symptom testimony; and

3.  Whether the ALJ properly weighed the medical opinion evidence.

ECF No. 15 at 2.

## DISCUSSION

**A. Listing of Impairments**

Plaintiff contends the ALJ erred by failing to conclude that Plaintiff's impairments met Listing 1.04. ECF No. 15 at 4-7.

1    At step three, the ALJ must determine if a claimant's impairments meet or

2  equal a listed impairment.  20 C.F.R. § 404.1520(a)(4)(iii).  The Listing of

3  Impairments "describes each of the major body systems impairments [which are

4  considered] severe enough to prevent an individual from doing any gainful

5  activity, regardless of his or her age, education or work experience."  20 C.F.R.

6  § 404.1525.  To meet a listed impairment, a claimant must establish that she meets

7  each characteristic of a listed impairment relevant to her claim.  20 C.F.R.

8  § 404.1525(d).  If a claimant meets the listed criteria for disability, she will be

9  found to be disabled.  20 C.F.R. § 404.1520(a)(4)(iii).  The claimant bears the

10  burden of establishing she meets a listing.  *Burch v. Barnhart*, 400 F.3d 676, 683

11  (9th Cir. 2005).  "An adjudicator's articulation of the reason(s) why the individual

12  is or is not disabled at a later step in the sequential evaluation process will provide

13  rationale that is sufficient for a subsequent reviewer or court to determine the basis

14  for the finding about medical equivalence at step 3."  SSR 17-2P, 2017 WL

15  3928306, at *4.

16    Plaintiff contends that the evidence shows Plaintiff's impairments meet

17  Listing 1.04A or 1.04C.  In order to meet Listing 1.04A, a claimant must establish:

18  (1) evidence of nerve root compression characterized by neuro-anatomic

19  distribution of pain; (2) limitations of motion of the spine; (3) motor loss ("atrophy

20  with associated muscle weakness or muscle weakness") accompanied by sensory

or reflex loss, and (4) if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).  20 C.F.R. § 404, Subpart P, Appendix 1, § 1.04A.  In order to meet Listing 1.04C, a claimant must establish: (1) lumbar spinal stenosis resulting in pseudoclaudication; (2) established by findings on appropriate medically acceptable imaging; (3) manifested by chronic nonradicular pain and weakness; and (4) resulting in an inability to ambulate effectively.  *Id.* at § 1.04C. "Ineffective ambulation is defined generally as having insufficient lower extremity functioning … to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."  *Id.* at § 1.00B(2)(b)(1).

Here, the ALJ found that Plaintiff's spinal imaging during the relevant period did not document spinal arachnoiditis or nerve root compromise and that Plaintiff's examination findings showed normal or adequate gait.  Tr. 411. Plaintiff challenges the ALJ's finding by citing to Plaintiff's October 2015 imaging, which showed progression of levoscoliosis and grade I spondylolisthesis, critical canal stenosis, resolve right paramedian protrusion component at L3-4, persistent broad-based disc bulge, and severe right neural foraminal narrowing, arguing that this meets the requisite imaging findings for Listing 1.04.  ECF No. 15 at 5-6 (citing Tr. 452-53).  Plaintiff also identifies evidence of Plaintiff exhibiting

1    slow, stiff, or antalgic gait and using a cane, arguing that this demonstrates an

2    inability to ambulate effectively under Listing 1.04C.  ECF No. 15 at 6-7.

3            Despite Plaintiff's argument, the ALJ's conclusion remains supported by

4    substantial evidence.  The opinion of a nonexamining physician may serve as

5    substantial evidence if it is supported by other independent evidence in the record.

6    *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  During the second

7    administrative hearing, Dr. Schmitter specifically reviewed the imaging Plaintiff

8    identifies and testified that these results showed moderate spinal problems that did

9    not justify surgical intervention.  Tr. 490-97.  Dr. Schmitter also testified that

10   Plaintiff's impairments did not meet Listing 1.04.  Tr. 482-85.  The ALJ gave Dr.

11   Schmitter's opinion significant weight.  Tr. 421.  In support of the listing

12   evaluation, the ALJ noted other evidence in the record that similarly failed to

13   document spinal arachnoiditis or nerve root compromise.  Tr. 411; *see* Tr. 266-69

14   (May 2013 imaging showing only mild to moderate degenerative disc changes);

15   Tr. 356 (October 2014 imaging showing mild to moderate degenerative changes in

16   the lower lumbar spine, minimal to mild degenerative changes in the left sacroiliac

17   joint, and otherwise unremarkable examination); Tr. 351 (December 2014 imaging

18   showing only degenerative spinal changes and mild degenerative levoscoliosis);

19   Tr. 956 (April 2015 imaging showing degenerative disc disease, neural foraminal

20   encroachment, mild central canal stenosis, and anterolisthesis); Tr. 955 (October

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 11

1    2015 imaging showing progressed levoscoliosis and spondylolisthesis, canal

2    stenosis, and neural foraminal narrowing).  The ALJ also noted the many instances

3    in which Plaintiff presented with a normal or adequate gait during treatment.  Tr.

4    411; *see* Tr. 277 (May 3, 2013: Plaintiff walked with an occasional limp and did

5    not use an assistive device); Tr. 368 (September 16, 2014: neurological exam

6    normal except slow gait); Tr. 373 (October 7, 2014: same); Tr. 378 (November 24,

7    2014: same); Tr. 791 (October 23, 2015: neurologic exam grossly intact).

8        The Court may not reverse the ALJ's decision based on Plaintiff's

9    disagreement with the ALJ's interpretation of the record.  *See Tommasetti v.*

10   *Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[W]hen the evidence is susceptible

11   to more than one rational interpretation" the court will not reverse the ALJ's

12   decision).  The ALJ reasonably concluded, based on Plaintiff's medical records

13   and Dr. Schmitter's hearing testimony, that Plaintiff's impairments did not meet

14   Listing 1.04.  This finding is supported by substantial evidence.

15   **B.  Plaintiff's Symptom Testimony**

16       Plaintiff contends the ALJ failed to rely on clear and convincing reasons to

17   discredit her symptom testimony.  ECF No. 15 at 20-26.

18       An ALJ engages in a two-step analysis to determine whether to discount a

19   claimant's testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL

20   1119029, at *2.  "First, the ALJ must determine whether there is 'objective

medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "The claimant is not required to show that [the claimant's] impairment 'could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom.'" *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he or she discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

1    Factors to be considered in evaluating the intensity, persistence, and limiting

2  effects of a claimant's symptoms include: (1) daily activities; (2) the location,

3  duration, frequency, and intensity of pain or other symptoms; (3) factors that

4  precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and

5  side effects of any medication an individual takes or has taken to alleviate pain or

6  other symptoms; (5) treatment, other than medication, an individual receives or has

7  received for relief of pain or other symptoms; (6) any measures other than

8  treatment an individual uses or has used to relieve pain or other symptoms; and (7)

9  any other factors concerning an individual's functional limitations and restrictions

10  due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7-*8; 20

11  C.F.R. § 404.1529(c).  The ALJ is instructed to "consider all of the evidence in an

12  individual's record," "to determine how symptoms limit ability to perform work-

13  related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

14    The ALJ found Plaintiff's impairments could reasonably be expected to

15  cause the alleged symptoms; however, Plaintiff's statements concerning the

16  intensity, persistence, and limiting effects of those symptoms were not entirely

17  consistent with the evidence.  Tr. 415.

18    *1.  Lack of Supporting Evidence*

19    The ALJ found that Plaintiff's symptom allegations were not supported by

20  the medical evidence.  Tr. 415-18.  An ALJ may not discredit a claimant's

1    symptom testimony and deny benefits solely because the degree of the symptoms

2    alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261

3    F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir.

4    1991). However, the objective medical evidence is a relevant factor, along with

5    the medical source's information about the claimant's pain or other symptoms, in

6    determining the severity of a claimant's symptoms and their disabling effects.

7    *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

8        Here, the ALJ noted that despite Plaintiff's allegation that she stopped

9    working in 2010 due to a severe panic attack, Plaintiff's primary care notes from

10   2010 to 2012 do not document reports of anxiety or panic attacks until July 2012.

11   Tr. 415; *see* Tr. 254-65. The ALJ also observed that Plaintiff's treatment notes did

12   not corroborate the severity of her reports of disabling back, hip, and hand pain.

13   Tr. 255 (August 29, 2012: Plaintiff reported no problems with pain despite not

14   opening her Vicodin prescription); Tr. 254 (January 28, 2013: Plaintiff reported hip

15   pain but demonstrated full range of motion; February 27, 2013: musculoskeletal

16   exam showed full range of motion); Tr. 344 (January 2, 2014: Plaintiff reported

17   disabling back and hip pain but biomechanical examination was normal); Tr. 367

18   (September 16, 2014: lab testing for rheumatoid arthritis negative); Tr. 356

19   (October 22, 2014: spinal imaging showed mild to moderate degenerative changes

20   of the lower lumbar spine and minimal to mild degenerative changes of the left

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 15

sacroiliac joint); Tr. 378 (November 24, 2014: neurological examination normal except slow gait; no swelling noted in Plaintiff's hands); Tr. 351-52 (December 5, 2014: spinal imaging showed mild to moderate degenerative changes of the lumbar spine; hip imaging showed no acute findings but mild bone abnormalities); Tr. 364-65 (March 11, 2015: spinal imaging showed degenerative changes of the mid and lower lumbar spine and scoliosis with moderate stenosis and neural foraminal narrowing); Tr. 956 (April 2, 2015: spinal imaging showed degenerative disc disease with encroachment on the neural foramina, mild canal stenosis, and 2mm of anterolisthesis); Tr. 918 (May 20, 2015: Plaintiff exhibited stiff gate but no neurological deficits and straight leg testing negative for radiculopathy); Tr. 791 (October 23, 2015: Plaintiff exhibit normal range of motion in her joints and mild or no tenderness); Tr. 1140-41 (October 23, 2015: Plaintiff exhibited normal range of motion in joints and spinal imaging did not show significant nerve compression); Tr. 1132 (April 8, 2016: Plaintiff reported significant improvement in back pain sine surgery and denied frequent panic attacks); Tr. 781 (April 14, 2016: laboratory testing negative for rheumatological disease indicators). The ALJ reasonably concluded this evidence did not support the level of limitation Plaintiff alleged.

The ALJ also noted that, contrary to Plaintiff's testimony that her hypersomnia was related to her pain symptoms, the record showed Plaintiff

attributed it to other causes when in treatment settings.  Tr. 416-17; *see* Tr. 343

(March 26, 2014: Plaintiff reported feeling "sleepy and uncoordinated" due to

medications; April 16, 2014: Plaintiff reported no longer oversleeping after

reducing medications); Tr. 342 (April 28, 2014: Plaintiff attributed her symptoms

to a recently-discovered natural gas leak in her home and stated that she felt

remarkably better after having the leak fixed; June 17, 2014: Plaintiff attributed

hypersomnia to taking too many medications); Tr. 394 (April 7, 2015: Plaintiff

attributed hypersomnia to the gas leak).  The ALJ reasonably concluded this

evidence was inconsistent with Plaintiff's symptom testimony.

Plaintiff challenges the ALJ's finding by identifying evidence in the record

that Plaintiff argues supports her symptom allegations.  ECF No. 15 at 20-23.

Plaintiff essentially invites this Court to reweigh the evidence.  The Court "may

neither reweigh the evidence nor substitute its judgment for that of the

Commissioner." *Blacktongue v. Berryhill*, 229 F. Supp. 3d 1216, 1218 (W.D.

Wash. 2017) (citing *Thomas*, 278 F.3d at 954); *see also Tommasetti*, 533 F.3d at

1038 ("[W]hen the evidence is susceptible to more than one rational interpretation"

the court will not reverse the ALJ's decision).  The ALJ's finding is based on a

rational interpretation of the record and is supported by substantial evidence.

//

//

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 17

1

## 2. *Improvement with Treatment*

2      The ALJ found Plaintiff's symptom allegations were inconsistent with her

3  repeated reports of improvement with treatment.  Tr. 415-17.  The effectiveness of

4  mitigating measures is a relevant factor in determining the severity of a claimant's

5  symptoms.  20 C.F.R. § 404.1529(c)(3).  Here, the ALJ noted several instances

6  where Plaintiff reported a significant improvement in her symptoms with

7  medication.  Tr. 415-17; *see* Tr. 256 (June 29, 2012: Plaintiff reported considerable

8  improvement and feeling 80% since starting Effexor); Tr. 255 (October 11, 2012:

9  Plaintiff reported feeling much better with medication; November 29, 2012:

10  Plaintiff reported Effexor worked quite well); Tr. 344 (February 6, 2014: Plaintiff

11  reported back and hip pain improved with Vicodin); Tr. 400 (July 10, 2014:

12  Plaintiff's anxiety reported to be well in fair control with medication and arthritis

13  improved with Prednisone); Tr. 396 (February 4, 2015: Plaintiff reported her low

14  back and hand pain were well controlled with medication).  Plaintiff challenges the

15  ALJ's finding by arguing that other evidence in the record indicates Plaintiff's

16  impairments did not improve with treatment.  ECF No. 15 at 22-23.  However,

17  where evidence is subject to more than one rational interpretation, the ALJ's

18  conclusion will be upheld.  *Burch*, 400 F.3d at 679.  The ALJ reasonably

19  concluded that Plaintiff's symptom allegations were inconsistent with the evidence

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 18

showing improvement with treatment.  This finding is supported by substantial evidence.

### 3.  Inconsistent Statements Regarding Substance Use

The ALJ found Plaintiff's symptom testimony was less credible because the evidence showed Plaintiff inconsistently reported her substance use to her different providers.  Tr. 416-19.  The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid."  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  Inconsistent statements about drug or alcohol use are appropriate grounds for the ALJ to discount a claimant's reported symptoms.  *Thomas*, 278 F.3d at 959.  Here, the ALJ noted that Plaintiff inconsistently reported her history of alcohol and marijuana use.  Tr. 416; *compare* Tr. 274 (May 4, 2013: Plaintiff reported drinking alcohol with a tendency to binge and marijuana use for pain control) *and* Tr. 284 (May 14, 2013: Plaintiff reported having 5 to 10 drinks per night, including consuming a cocktail the night before the assessment, and reported daily marijuana use until approximately seven years prior) *with* Tr. 289 (June 11, 2013: Plaintiff denied consuming alcohol in the last year and endorsed using marijuana in the last twelve months).  The ALJ reasonably concluded that Plaintiff's inconsistent statements undermined the reliability of her other symptom reporting.  This finding is supported by substantial evidence.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

1

### 4.  Daily Activities

2      The ALJ found Plaintiff's symptom testimony was inconsistent with her

3  reported daily activities.  Tr. 418-19.  The ALJ may consider a claimant's activities

4  that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can

5  spend a substantial part of the day engaged in pursuits involving the performance

6  of exertional or non-exertional functions, the ALJ may find these activities

7  inconsistent with the reported disabling symptoms.  *Fair v. Bowen*, 885 F.2d 597,

8  603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113.  "While a claimant need not

9  vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a

10  claimant's symptom claims when the claimant reports participation in everyday

11  activities indicating capacities that are transferable to a work setting" or when

12  activities "contradict claims of a totally debilitating impairment."  *Molina*, 674

13  F.3d at 1112-13.

14      Here, the ALJ found that despite Plaintiff's allegations that her symptoms

15  caused her to be unable to lift more than five pounds or leave her own house,

16  Plaintiff reported her activities to include repeatedly doing significant yard work

17  and taking a trip to Las Vegas.  Tr. 418; *see* Tr. 256 (June 29, 2012: Plaintiff

18  reported doing four to six hours of yard work per day in anticipation of her son's

19  wedding); Tr. 255 (August 29, 2012: Plaintiff reported being extremely busy

20  leading up to her son's wedding; October 11, 2012: Plaintiff reported pruning a lot

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 20

1   of apple and pear trees); Tr. 52-53, 67 (Plaintiff testified that she traveled to Las

2   Vegas in March 2015 and gambled in a casino).  The ALJ also noted that despite

3   alleging an inability to concentrate, Plaintiff reported her daily activities to include

4   crocheting, computer games, and doing puzzle books.  Tr. 418; *see* Tr. 274, 575.

5   The ALJ reasonably concluded that these activities were inconsistent with the

6   limitations Plaintiff alleged.  Plaintiff challenges the ALJ's conclusion by offering

7   a different interpretation of the evidence, but where evidence is subject to more

8   than one rational interpretation, the ALJ's conclusion will be upheld.  *Burch*, 400

9   F.3d at 679.  The ALJ's finding is supported by substantial evidence.

10          *5.  Inconsistent Symptom Reporting*

11          The ALJ found Plaintiff's symptom testimony was less credible because the

12  evidence showed Plaintiff inconsistently reported her symptoms between an

13  examining and treating provider.  Tr. 416-17.  In evaluating a claimant's symptom

14  claims, an ALJ may consider the consistency of an individual's own statements

15  made in connection with the disability review process with any other existing

16  statements or conduct made under other circumstances.  *Smolen*, 80 F.3d at 1284;

17  *Thomas*, 278 F.3d at 958-59.  Additionally, "[t]he failure to report symptoms to

18  treatment providers is a legitimate consideration in determining the credibility of

19  those complaints."  *Lesher v. Comm'r of Soc. Sec.*, No. 2:15-cv-00237-SMJ, 2018

20  WL 314819, at *4 (E.D. Wash. Jan. 5, 2018) (citing *Greger v. Barnhart*, 464 F.3d

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 21

972, 972 (9th Cir. 2006)).  Here, the ALJ noted some discrepancy between

Plaintiff's symptom reporting to an examining source and her treatment provider.

Tr. 416; *see* Tr. 272-77 (May 3, 2013 consultative examination: Plaintiff reported

disabling back, neck, and hip pain; exhibited decreased range of motion in the

neck, back, and hips; and walked with an occasional limp); Tr. 342-48 (Between

July 2013 and June 2014, Plaintiff reported back pain during one appointment out

of over a dozen).  The ALJ reasonably concluded that Plaintiff's symptom

reporting was inconsistent.  This finding is supported by substantial evidence.

### 6.  *Work Activity*

The ALJ found Plaintiff's symptom testimony was inconsistent with her

own work history.  Tr. 415.  Working with an impairment supports a conclusion

that the impairment is not disabling.  *See Drouin v. Sullivan*, 966 F.2d 1255, 1258-

59 (9th Cir. 1992).  Here, the ALJ noted that Plaintiff reported that her

psychological impairments were chronic and dated back to childhood, meaning

that they were present during periods in which Plaintiff was able to sustain gainful

employment.  Tr. 415; *see* Tr. 273 (Plaintiff reported having problems with

depression, anxiety, panic attacks, insomnia, and nightmares since the age of 14

and did not report a worsening during the relevant period).  The ALJ reasonably

concluded that this evidence undermined Plaintiff's allegations of disabling

impairments.  This finding is supported by substantial evidence.

1    The ALJ also found Plaintiff's report that she was looking for part-time

2  work was inconsistent with her alleged disability.  Tr. 418.  Seeking work despite

3  an impairment supports an inference that the impairment is not disabling.  *Bray v.*

4  *Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).  However,

5  holding oneself out as available for part-time work is not necessarily inconsistent

6  with disability allegations.  *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d

7  1155, 1161-62 (9th Cir. 2008).  Although this reasoning was error, the error is

8  harmless because the ALJ's other work history finding remains supported by

9  substantial evidence.  *Id.* at 1162-63.

10      *7.  Smoking Cessation*

11    The ALJ found Plaintiff's symptom testimony was less credible because she

12  failed to comply with admonitions to stop smoking.  Tr. 417-18.  Given the

13  addictive nature of smoking, the Ninth Circuit has disfavored resting a credibility

14  determination upon the failure to quit smoking.  *See Bray*, 554 F.3d at 1227.

15  Moreover, SSR 18-3p clarifies that "prescribed treatment does not include lifestyle

16  modifications, such as dieting, exercise, or smoking cessation."  2018 WL

17  4945641, at *3 (effective October 29, 2018).  Here, the ALJ noted that Plaintiff

18  was repeatedly counseled to quit smoking, because it was a "trigger for rheumatoid

19  arthritis" and for other pain factors.  Tr. 417-18.  This is not a clear and convincing

20  reason to discredit Plaintiff's symptom testimony.  *Bray*, 554 F.3d at 1227.

1  Nevertheless, this error is harmless because, as discussed *supra*, the ALJ lists

2  additional reasons, supported by substantial evidence, for discrediting Plaintiff's

3  symptom complaints.  *See Carmickle*, 533 F.3d at1162-63; *Molina*, 674 F.3d at

4  1115 ("[S]everal of our cases have held that an ALJ's error was harmless where

5  the ALJ provided one or more invalid reasons for disbelieving a claimant's

6  testimony, but also provided valid reasons that were supported by the record.").

7  Plaintiff is not entitled to remand on this ground.

8  **C.  Medical Opinion Evidence**

9  Plaintiff challenges the ALJ's evaluation of the medical opinions of Mary

10  Pellicer, M.D.; Rox Burkett, M.D.; Joe Kim, M.D.; Emma Billings, Ph.D.; Eric

11  Schmitter, M.D.; and Tonjia Jones, ARNP.  ECF No. 15 at 8-20.

12  There are three types of physicians: "(1) those who treat the claimant

13  (treating physicians); (2) those who examine but do not treat the claimant

14  (examining physicians); and (3) those who neither examine nor treat the claimant

15  [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

16  *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

17  Generally, the opinion of a treating physician carries more weight than the opinion

18  of an examining physician, and the opinion of an examining physician carries more

19  weight than the opinion of a reviewing physician.  *Id.*  In addition, the

20  Commissioner's regulations give more weight to opinions that are explained than

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 24

to opinions that are not, and to the opinions of specialists on matters relating to their area of expertise over the opinions of non-specialists. *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester*, 81 F.3d at 830-831). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews*, 53 F.3d at 1041.

The opinion of an acceptable medical source such as a physician or psychologist is different from that of a non-acceptable medical source. 20 C.F.R. § 404.1527(f)(1).[1] The ALJ is required to consider the opinions of non-acceptable

---

[1]    Because Plaintiff's claim was filed in 2013, the regulations governing claims filed before March 27, 2017 apply to this case. 20 C.F.R. § 404.614.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 25

medical sources.  20 C.F.R. § 404.1527(c).  The factors used to weigh the opinion

of a non-acceptable medical source are the same as those used to weigh the opinion

of an acceptable medical source, although not every factor will apply in every case.

20 C.F.R. § 404.1527(c)(1)-(6), (f)(1).  The ALJ is only required to provide

germane reasons to reject the opinion of an "other source," including that of a non-

acceptable medical source.  *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017)

(citing *Molina*, 674 F.3d at 1111).

    *1.  Dr. Pellicer*

    Dr. Pellicer examined Plaintiff on May 3, 2013; diagnosed Plaintiff with

chronic neck and back pain secondary to degenerative disc disease and SI joint

dysfunction, depression, general anxiety disorder and agoraphobia, and sleep

apnea; and opined Plaintiff was able to stand and walk for 4-6 hours in an 8 hour

day with more frequent breaks; that Plaintiff was able to sit for about 6 hours

cumulatively in an 8 hour day with more frequent breaks; that Plaintiff did not

need assistive devices; that Plaintiff was capable of lifting and carrying less than

10 pounds occasionally; that Plaintiff could not bend, squat, crawl, kneel, or climb;

that Plaintiff had no manipulative restrictions; and that Plaintiff was able to see,

hear, speak, and travel independently and do all the necessary daily self-care

activities.  Tr. 272-77.  The ALJ gave this opinion limited weight.  Tr. 420.

Because Dr. Pellicer's opinion was contradicted by Dr. Rubio, Tr. 100-02, and Dr.

Schmitter, Tr. 486-87, the ALJ was required to provide specific and legitimate

reasons for rejecting Dr. Pellicer's opinion.[2]  *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Pellicer's opinion was inconsistent with Plaintiff's

reported activities.  Tr. 420.  An ALJ may discount a medical source opinion to the

extent it conflicts with the claimant's daily activities.  *Morgan v. Comm'r of Soc.*

*Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).  Here, the ALJ found Dr.

Pellicer's opinions about Plaintiff's lifting and postural limitations were

inconsistent with Plaintiff's reported yard work activities.  Tr. 420; *see* Tr. 256

(June 29, 2012: Plaintiff reported doing four to six hours of yard work per day in

anticipation of her son's wedding); Tr. 255 (August 29, 2012: Plaintiff reported

being extremely busy leading up to her son's wedding; October 11, 2012: Plaintiff

reported pruning a lot of apple and pear trees).  The ALJ reasonably concluded that

this activity was inconsistent with Dr. Pellicer's opined limitations.  This finding is

_____

[2]    Plaintiff argues Dr. Pellicer's opinion was not contradicted because no other

source rendered an opinion as to whether Plaintiff needed more frequent breaks.

ECF No. 15 at 9.  However, Dr. Rubio opined Plaintiff could perform work at the

light level and Dr. Schmitter opined Plaintiff could perform work at the medium

level, which contradict the less-than-sedentary exertional limitations Dr. Pellicer

opined.

1    supported by substantial evidence.

2          Second, the ALJ found Dr. Pellicer's opinion was not supported by

3    Plaintiff's longitudinal medical record.  Tr. 420.  An ALJ may discredit physicians'

4    opinions that are unsupported by the record as a whole.  *Batson v. Comm'r of Soc.*

5    *Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Here, the ALJ noted that Dr.

6    Pellicer's opinion, which was based on Plaintiff's presentation with weakness

7    during the examination, was inconsistent with Plaintiff's longitudinal treatment

8    records, which failed to similarly document weakness.  Tr. 420; *see* Tr. 289 (June

9    11, 2013: normal physical examination); Tr. 400 (July 10, 2014: no muscle

10   weakness in upper or lower extremities); Tr. 367-68 (September 16, 2014: normal

11   neurological exam except for slow gait); Tr. 918 (May 20, 2015: normal

12   neurological exam); Tr. 791 (October 23, 2015: neurological exam grossly intact);

13   Tr. 1141 (October 23, 2015: normal upper extremity strength); Tr. 981 (December

14   21, 2015: full motor strength on examination); Tr. 779 (June 3, 2016: neurological

15   exam grossly intact).  The ALJ reasonably concluded that this evidence was

16   inconsistent with Dr. Pellicer's opinion.  Plaintiff challenges the ALJ's conclusion

17   by identifying other evidence in the record that Plaintiff argues supports Dr.

18   Pellicer's opinion.  ECF No. 15 at 9.  However, even where evidence is subject to

19   more than one rational interpretation, the ALJ's conclusion will be upheld.  *Burch*,

20   400 F.3d at 679.  The ALJ's finding is supported by substantial evidence.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 28

2.  *Dr. Burkett*

Dr. Burkett reviewed the record and opined on September 25, 2015, that Plaintiff's impairments met or equaled Listings 1.02 or 14.09A.  Tr. 401-04.  The ALJ gave this opinion minimal weight.  Tr. 420.  Because Dr. Burkett's opinion was contradicted by Dr. Rubio, Tr. 100-02, and Dr. Schmitter, Tr. 481-82, 486-87, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Burkett's opinion.  *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Burkett's opinion was inconsistent with the longitudinal evidence.  Tr. 420.  An ALJ may discredit physicians' opinions that are unsupported by the record as a whole.  *Batson*, 359 F.3d at 1195.  As discussed *supra*, the ALJ noted that the longitudinal record did not document spinal arachnoiditis or nerve root compromise.  Tr. 420; *see* Tr. 266-69 (May 2013 imaging showing only mild to moderate degenerative disc changes); Tr. 356 (October 2014 imaging showing mild to moderate degenerative changes in the lower lumbar spine, minimal to mild degenerative changes in the left sacroiliac joint, and otherwise unremarkable examination); Tr. 351 (December 2014 imaging showing only degenerative spinal changes and mild degenerative levoscoliosis); Tr. 956 (April 2015 imaging showing degenerative disc disease, neural foraminal encroachment, mild central canal stenosis, and anterolisthesis); Tr. 955 (October 2015 imaging showing progressed levoscoliosis and spondylolisthesis, canal

1    stenosis, and neural foraminal narrowing).  The ALJ reasonably concluded that this

2    evidence was inconsistent with Dr. Burkett's opinion that Plaintiff's impairments

3    met the severity of a listed impairment.  Plaintiff again challenges the ALJ's

4    conclusion by identifying other evidence in the record that Plaintiff argues supports

5    Dr. Burkett's opinion.  ECF No. 15 at 12.  However, the Court may not reverse the

6    ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of

7    the record.  *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible

8    to more than one rational interpretation" the court will not reverse the ALJ's

9    decision).  The ALJ's conclusion is supported by substantial evidence.

10        Second, the ALJ found Dr. Burkett's opinion was inconsistent with

11    Plaintiff's activities.  Tr. 420.  An ALJ may discount a medical source opinion to

12    the extent it conflicts with the claimant's daily activities.  *Morgan*, 169 F.3d at

13    601-02.  Here, the ALJ found Plaintiff's yard work and travel activities were

14    inconsistent with the level of impairment Dr. Burkett opined.  Tr. 420; *see* Tr. 256

15    (June 29, 2012: Plaintiff reported doing four to six hours of yard work per day in

16    anticipation of her son's wedding); Tr. 255 (August 29, 2012: Plaintiff reported

17    being extremely busy leading up to her son's wedding; October 11, 2012: Plaintiff

18    reported pruning a lot of apple and pear trees).  The ALJ reasonably concluded that

19    this activity was inconsistent with Dr. Burkett's opined limitations.  This finding is

20    supported by substantial evidence.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 30

### 3.  Dr. Kim

On December 14, 2015, Dr. Kim recorded in a treatment note that Plaintiff intended to have surgery for low back pain in one week and Dr. Kim suggested that, in the long-term, Plaintiff should not be sitting for more than 2 consecutive hours at one time, that Plaintiff should not be standing or walking more than 1 hour continuously, and that Plaintiff should lift less than 25 pounds.  Tr. 905.  Plaintiff contends the ALJ should have evaluated this statement as medical opinion evidence.  ECF No. 15 at 14-15.

The ALJ must evaluate every medical opinion received according to a list of factors set forth by the Social Security Administration.  20 C.F.R. § 404.1527(c).  "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairments, including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(1).  An ALJ is not required to provide clear and convincing reasons for rejecting statements within medical records when those records do not reflect physical or mental limitations or otherwise provide information about the ability to work.  *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (deciding that because the physician's report did not assign any specific limitations or opinions regarding the claimant's ability to work, "the ALJ did not

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 31

need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions"). The statement in Dr. Kim's treatment notes that Plaintiff identifies is a suggestion of how Plaintiff should limit her activities in the long-term following an upcoming surgery, rather than an opinion regarding Plaintiff's actual functioning. Tr. 905. Accordingly, this evidence is not a "medical opinion," and the ALJ was not required to provide reasons to reject it. *Turner*, 613 F.3d at 1223. Plaintiff identifies no error in the ALJ's evaluation of this evidence.

### 4. Dr. Billings

On May 14, 2013, Dr. Billings examined Plaintiff; diagnosed Plaintiff with major depressive disorder, anxiety disorder NOS, alcohol dependence, and agoraphobia; and opined that it may be difficult for Plaintiff to work in any setting which requires frequent public contact and that Plaintiff can be expected to have difficulty working in a stressful environment. Tr. 281-85. The ALJ gave this opinion some weight. Tr. 422. Because Dr. Billings' opinion was contradicted by Dr. Kraft, Tr. 87-89, and Dr. Comrie, Tr. 102-104, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Billings' opinion. *Bayliss*, 427 F.3d at 1216.

Plaintiff contends the ALJ erred by failing to discuss Dr. Billings' assessed GAF score and opinion on Plaintiff's tolerance for workplace stress. ECF No. 15

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 32

19-20.  Dr. Billing's opinion that Plaintiff "can be expected to have difficulty working in a stressful environment" is not a specific statement of what Plaintiff can do despite her impairments, and therefore is not a medical opinion that the ALJ was required to evaluate.  20 C.F.R. § 404.1527(a)(1); *Turner*, 613 F.3d at 1223. Additionally, while a GAF score may help guide an ALJ's decision, an ALJ is not bound to consider a GAF score.  The Commissioner has explicitly disavowed use of GAF scores as indicators of disability.  65 Fed. Reg. 50746-01, 50764-65 (Aug. 21, 2000) ("The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorder listings.").  Plaintiff identifies no error in the ALJ's evaluation of Dr. Billings' opinion.

          *5.   Dr. Schmitter*

          Dr. Schmitter reviewed the record and testified at the June 18, 2019 hearing that Plaintiff was capable of performing work at the medium exertional level.  Tr. 476-502.  The ALJ gave Dr. Schmitter's opinion significant weight.  Tr. 421. Plaintiff challenges the ALJ's evaluation of Dr. Schmitter's opinion by arguing that Dr. Schmitter appeared confused, uninformed, mischaracterized evidence, and "showed a lack of basic medical knowledge," and therefore should have been given less weight.  ECF No. 15 at 16-19.

          Plaintiff identifies no legal error in the ALJ's evaluation of Dr. Schmitter's opinion.  As an initial matter, the Court notes that Plaintiff did not object to Dr.

1    Schmitter's qualifications during the administrative hearing.  Tr. 476.  More

2    importantly, though, an ALJ may credit the opinion of a nonexamining expert who

3    testifies at hearing and is subject to cross-examination.  *See Andrews*, 53 F.3d at

4    1042 (citing *Torres v. Sec'y of H.H.S.,* 870 F.2d 742, 744 (1st Cir. 1989)).  The

5    opinions of a nonexamining physician may serve as substantial evidence when they

6    are supported by other evidence in the record and are consistent with it.  *Andrews*,

7    53 F.3d at 1041.  Other cases have upheld the rejection of an examining or treating

8    physician based in part on the testimony of a non-examining medical advisor when

9    other reasons to reject the opinions of examining and treating physicians exist

10   independent of the non-examining doctor's opinion.  *Lester*, 81 F.3d at 831 (citing

11   *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory

12   test results, contrary reports from examining physicians and testimony from

13   claimant that conflicted with treating physician's opinion); *Roberts v. Shalala*, 66

14   F.3d 179, 184 (9th Cir. 1995) (rejection of examining psychologist's functional

15   assessment which conflicted with his own written report and test results).  Thus,

16   case law requires not only an opinion from the consulting physician but also

17   substantial evidence (more than a mere scintilla but less than a preponderance),

18   independent of that opinion which supports the rejection of contrary conclusions

19   by examining or treating physicians.  *Andrews*, 53 F.3d at 1041.  As discussed

20   *supra*, the ALJ discussed Dr. Schmitter's opinion, compared it to other medical

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 34

1  opinion evidence in the record, and identified evidence in the record, such as the

2  lack of documentation of nerve root compression, that supported Dr. Schmitter's

3  opinion over the other medical opinions.  The ALJ's evaluation of Dr. Schmitter's

4  opinion is supported by substantial evidence.

5         Plaintiff's challenge is merely an invitation to this court to reweigh the

6  evidence.  The Court "may neither reweigh the evidence nor substitute its

7  judgment for that of the Commissioner."  *Blacktongue*, 229 F. Supp. 3d at 1218

8  (citing *Thomas*, 278 F.3d at 954); *see also Tommasetti*, 533 F.3d at 1038 ("[W]hen

9  the evidence is susceptible to more than one rational interpretation" the court will

10 not reverse the ALJ's decision).  Because the ALJ's interpretation of the evidence

11 is reasonable, the Court will not reverse the ALJ's conclusion.

12      *6.  Ms. Jones*

13        Ms. Jones, Plaintiff's treating ARNP, opined on May 24, 2019 that Plaintiff

14 had moderate to marked limitations in sustained concentration and persistence, that

15 Plaintiff's combination of anxiety and pain caused her to be unable to adapt to

16 changes that Plaintiff could not work and would frequently be absent from work,

17 that Plaintiff would have to lie down during the day, that Plaintiff was unable to sit

18 for more than 15 minutes at a time, that Plaintiff was unable to meet the demands

19 of full time sedentary work, and that these limitations existed since at least July 14,

20 2010.  Tr. 2339-46.  The ALJ gave Ms. Jones' opinion minimal weight.  Tr. 421.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 35

1  As an ARNP, Ms. Jones is not an acceptable medical source.  20 C.F.R. §

2  404.1502(a)(7).  Therefore, the ALJ was required to provide germane reason to

3  discredit Ms. Jones' opinion.  *Popa*, 872 F.3d at 906 (citing *Molina*, 674 F.3d at

4  1111).

5      First, the ALJ found Ms. Jones' opinion was inconsistent with the medical

6  evidence, including Ms. Jones' own treatment notes.  Tr. 421.  Inconsistency with

7  the evidence is a germane reason for rejecting evidence.  20 C.F.R. §

8  404.1527(c)(4); *Bayliss*, 427 F.3d at 1218.  Here, the ALJ noted that despite

9  opining that Plaintiff's impairments had persisted since 2010, the record only

10  documented treatment notes from Ms. Jones beginning in early 2018, well after

11  Plaintiff's date last insured in December 2015.  Tr. 421; *see* Tr. 1122 (treatment

12  notes beginning January 25, 2018).  Although Ms. Jones opined Plaintiff had

13  significant functional limitations, her treatment notes did not document

14  corresponding physical or mental findings.  Tr. 421; *see* Tr. 822, 824-25 (normal

15  examination findings).  The ALJ reasonably concluded that this evidence was

16  inconsistent with the significant limitations Ms. Jones opined.  This finding is

17  supported by substantial evidence.

18      Second, the ALJ found Ms. Jones' opinion was based on Plaintiff's

19  subjective symptom reports, which the ALJ found were not fully credible.  Tr. 421.

20  A physician's opinion may be rejected if it based on a claimant's subjective

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 36

complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Fair*, 885 F.2d at 604.  "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, [this] is no evidentiary basis for rejecting the opinion." *Ghanim*, 763 F.3d at 1162.  Here, the ALJ noted that, in light of the lack of supportive findings for her opinion in Ms. Jones' treatment notes, Ms. Jones' opinion was more heavily based on Plaintiff's subjective symptom reporting.  Tr. 421.  For reasons discussed *supra*, the ALJ reasonably concluded Plaintiff's subjective symptom reporting was not fully credible.  The ALJ reasonably concluded that Ms. Jones' opinion was based more heavily on Plaintiff's subjective symptom reports.  This finding is supported by substantial evidence.

Third, the ALJ found Ms. Jones' opinion was inconsistent with Plaintiff's activities.  Tr. 421.  Inconsistency with a claimant's daily activities is a germane reason to reject other source testimony.  *Carmickle*, 533 F.3d at 1163-64; *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).  As discussed *supra*, the ALJ noted Plaintiff's activities included significant yard work and a long-distance trip.  Tr. 421; *see* Tr. 256 (June 29, 2012: Plaintiff reported doing four to six hours of yard work per day in anticipation of her son's wedding); Tr. 255 (August 29, 2012: Plaintiff reported being extremely busy leading up to her son's wedding; October 11, 2012: Plaintiff reported pruning a lot of apple and pear trees); Tr. 52-53, 67

(Plaintiff testified that she traveled to Las Vegas in March 2015 and gambled in a casino). The ALJ also noted that despite opining Plaintiff had moderate to marked limitations in concentration and persistence, Plaintiff reported her daily activities to include crocheting, computer games, and doing puzzle books. Tr. 421; *see* Tr. 274, 575. The ALJ reasonably concluded that these activities were inconsistent with Ms. Jones' opined limitations. This finding is supported by substantial evidence.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 15) is DENIED.

2. Defendant's Motion for Summary Judgment (ECF No. 16) is GRANTED.

The District Court Executive is directed to enter this Order, enter judgment accordingly, furnish copies to counsel, and **close the file**.

**DATED** July 24, 2020.



THOMAS O. RICE
Chief United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 38